BERGER, Appellee; Ohio Department of Mental Health, Appellant,

v.

**CLERMONT COUNTY ALCOHOL, DRUG ADDICTION &
MENTAL HEALTH SERVICES BOARD, Appellee.**

[Cite as *Berger v. Clermont Cty. Alcohol, Drug Addiction &
Mental Health Serv. Bd.* (1993), 86 Ohio App.3d 349.]

Court of Appeals of Ohio,
Clermont County.

No. CA92–06–065.

Decided Feb. 16, 1993.

*Frank W. Malott,* for appellee, William Frederick Berger.

*Lee Fisher,* Attorney General, and *David J. Kovach,* Assistant Attorney General, for appellant, Ohio Department of Mental Health.

*Donald W. White,* Clermont County Prosecuting Attorney, and *James A. Shriver,* Assistant Prosecuting Attorney, for appellee, Clermont County Alcohol, Drug Addiction & Mental Health Services Board.

WILLIAM W. YOUNG, Judge.

On November 18, 1991, respondent-appellee, William Frederick Berger, was admitted to the Pauline Warfield Lewis Center in Cincinnati, Ohio, as a result of his mental illness. The Lewis Center is a residential treatment facility for the mentally ill owned by the state and operated by respondent-appellant, the Ohio Department of Mental Health ("department of mental health"). In January 1992, Berger's treating psychiatrist, Steven Best, M.D., concluded that the center was no longer the least restrictive placement consistent with Berger's treatment needs. Specifically, Best concluded that Berger was ready for discharge from the center and that he should be placed in a group home or other living facility.

Following receipt of Best's recommendations, petitioner-appellee, the Clermont County Board of Alcohol, Drug Addiction and Mental Health Services Board ("county board of mental health"), filed an affidavit pursuant to R.C. 5122.11 with the Clermont County Probate Court, seeking involuntary commitment of Berger. The probate court held a hearing in response to the affidavit on January 27, 1992. At the conclusion of the hearing, the court found that Berger was a mentally ill person subject to hospitalization by court order. The court further found that a private placement with a Buckeye Family Nursing Home located in Hamilton, Ohio, was the least restrictive alternative available, and ordered Berger placed in that facility. The court then declared that either the county board of mental health or the department of mental health was responsible for payment of Berger's placement expenses. Another hearing was scheduled to determine who was responsible for the funding.

On February 20, 1992, the funding issue was heard by a probate court referee. The department of mental health argued that it was not a party to the action, and therefore could not be compelled to bear the cost of Berger's private placement. The department of mental health also argued that assuming *arguendo* that the probate court was vested with jurisdiction to determine the department of mental health's obligation to fund private placements, the obligation did not and does not extend beyond the funding that it has already allocated to county boards of mental health. Nevertheless, the referee concluded on April 2, 1992 that the department of mental health should be ordered to pay the net cost of Berger's placement, after deducting Berger's Social Security allowance.

The department of mental health filed objections to the referee's report on April 15, 1992. In an entry dated May 11, 1992, the probate court overruled the objections and affirmed and adopted the referee's report. From that entry, the department of mental health has filed this timely appeal, asserting as its sole assignment of error that the probate court erred by ordering it to pay the cost of

placement and treatment of a mentally ill person who is committed to a private nursing home.

Appellant raises several issues in its sole assignment of error. However, for purposes of this appeal, we need only discuss the issue of the probate court's jurisdiction. The primary issue before this court is whether the probate court has the authority to order the department of mental health to pay the cost of care of a mentally ill person placed in a private, non-public facility.

The county board of mental health contends that the probate court had jurisdiction to resolve the issue of who is responsible for the funding of Berger's placement because, by statute, the court is granted plenary power to fully dispose of any matter properly before it. R.C. 2101.24(C) provides:

"The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."

R.C. 2101.24(C), however, must be read in conjunction with R.C. Chapter 5122, and more specifically R.C. 5122.15, to determine the jurisdiction and the powers a probate court has over mentally ill persons. R.C. 5122.15 grants the probate court jurisdiction to determine whether an individual is a mentally ill person subject to hospitalization by court order, and enables the court to place a mentally ill person in an appropriate less restrictive environment consistent with the patient's treatment needs. However, neither R.C. 5122.15 nor any other section of R.C. Chapter 5122 bestows upon the probate court the authority to order the department of mental health to pay for a person's care in a private nursing home.

A similar conclusion was reached by the Ohio Supreme Court in *In re Hamil* (1982), 69 Ohio St.2d 97, 23 O.O.3d 151, 431 N.E.2d 317, wherein it held that "[t]he Juvenile Court acts beyond the scope of its jurisdiction when it orders the Ohio Department of Mental Health to pay the cost of care of a child placed in a private, non-public psychiatric hospital." *Id.* at syllabus. In reaching that conclusion, the Supreme Court determined that neither R.C. Chapter 5122 nor R.C. Chapter 5123 vests the juvenile court with the authority to order the department of mental health to pay for the cost of a child's private placement. In addition, the court concluded that when the "General Assembly adopted R.C. 5122.15(E) and (F) it did not intend the state of Ohio to assume the cost of sending mentally ill individuals to expensive, private, non-public facilities simply because those facilities might offer less restrictive treatment alternatives." *Id.* at 103, 23 O.O.3d at 155, 431 N.E.2d at 320. The court concluded that the "cost of fostering such a policy might prove to be astronomical." *Id.*

Since R.C. Chapter 5122 must be read in conjunction with R.C. 2101.24 and probate courts' plenary powers, we are of the opinion that the Clermont County Probate Court acted beyond the scope of its jurisdiction when it ordered the department of mental health to fund the cost of Berger's placement. Such action was limited by an existing Ohio statute.

Accordingly, appellant's sole assignment of error is sustained and the judgment of the probate court is reversed. We therefore remand the cause to the probate court for proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., and KOEHLER, J., concur.