## IN RE BLACKMAN.

[Cite as *In re Blackman* (1993), 90 Ohio App.3d 10.]

Court of Appeals of Ohio,
Tuscarawas County.

No. 92AP090073.

Decided Aug. 18, 1993.

*Lee Fisher,* Attorney General, *John T. Williams,* Assistant Attorney General, Health and Human Services Section, and *Taryn Heath,* Assistant Attorney General, for appellant.

*Tina Galigher,* for appellee.

---

READER, Judge.

The facts in this case are not in dispute. The case originated by the filing of an affidavit under R.C. 5123.71, alleging that Roger Wayne Blackman was a mentally retarded person subject to institutionalization by court order. On August 11, 1992, a hearing was held in the Probate Division of the Common Pleas Court of Tuscarawas County. On the basis of testimony at the hearing, the court found that Blackman was at least moderately mentally retarded and, because of his retardation, represented a very substantial risk of physical impairment or injury to himself. On August 31, 1992, the trial court issued a judgment entry—order of involuntary commitment, which committed Roger Wayne Blackman to the Cambridge Developmental Center, finding that to be the least restrictive alternative available consistent with his habilitation plan.

During the hearing on August 11, Michael Ihlanfeld, Superintendent of Cambridge Developmental Center (hereinafter referred to as "CDC"), testified that as the head of the institution, he was responsible for ensuring that CDC maintained Medicaid certification, and that CDC was annually surveyed by Medicaid to determine compliance with Medicaid standards. He also testified that CDC was then at its licensed capacity and subsequently indicated that licensed capacity for CDC was one hundred forty-two patients.

After the filing of the trial court's order on August 31, 1992, the Ohio Department of Mental Retardation and Developmental Disabilities (hereinafter referred to as "MRDD"), which operates Cambridge Developmental Center under the provisions of R.C. 5123.03, filed its notice of appeal to this court.

The appellant states two assignments of error:

"I. The trial court lacked the authority to order the commitment of the respondent-appellee to Cambridge Developmental Center in violation of R.C. 5123.76(C)(1)(a).

"II. The order of the trial court committing the respondent-appellee to the Cambridge Developmental Center was contrary to law because it caused that institution to violate federal and state licensing standards."

Appellee subsequently filed a brief wherein appellant's assignments of error were admitted, and thereby indicated that the trial court should be reversed.

The appellee did not orally argue the matter; however, appellant did appear and did orally argue.

■ Prior to discussing the assignments, it is important to note what the appellant did not state as error. The trial court found that Roger W. Blackman was at least moderately retarded, that this retardation represented a very substantial risk of physical impairment or injury to himself, that because of his retardation it was necessary to commit him to an institution, and that this was the least restrictive alternative available. In addition, the appellant does not question the authority of the court to make these findings and orders based upon the testimony. In reality, the only issue before this court is whether R.C. 5123.76(C)(1)(a) is a prohibition on the court's authority to commit to an institution a mentally retarded person when such commitment would cause that institution to exceed its licensed capacity under Medicaid certification.

We agree with appellant that the state of Ohio does participate under Title XIX of the Social Security Act and that:

"In order to participate, the institutions must conform to Medicaid specifications and be certified under Medicaid; that CDC is Medicaid certified; that on the day in question CDC was at capacity; and that the trial court's order placed said certification in jeopardy; and that R.C. 5123.76(C)(1)(a) recited herein clearly bars the court from ordering the commitment of a mentally retarded person to a public institution and said commitment would cause the institution to exceed its license capacity." Appellant's brief at 4.

The appellant relies on basically three cases as it would relate to the court's authority to institutionalize a person who is either mentally retarded or mentally ill. The first case, *In re Hamil* (1982), 69 Ohio St.2d 97, 23 O.O.3d 151, 431 N.E.2d 317, is a juvenile case wherein the trial court ordered the institutionalization of a youth in a private facility and in addition ordered the state to pay unreimbursed costs of the youth's placement. The appeals court indicated that the court had the power to order the institutionalization but not the authority to order the state to pay for his placement. If anything, this undergirds the court's authority to order an institutionalization under the proper circumstances. We do not take issue with the fact that the court does not have the authority to legislate. The second case is *In re Arney* (1991), 68 Ohio App.3d 385, 588 N.E.2d 296. As pointed out by the appellant in the brief, this case does not even reach the issue of Subsection (a).

Appellant cites *Nicoletti v. Brown* (N.D. Ohio 1987), 740 F.Supp. 1268, for the proposition that by committing Blackman to the Cambridge Developmental Center, causing the facility to exceed its licensed capacity, the court abridged the

constitutional right of the present residents of that facility to treatment and care in a facility meeting Medicaid standards.

■ Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a mentally retarded person who has been involuntarily committed has a protected liberty interest in reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might reasonably be required by these interests. *Youngberg v. Romeo* (1982), 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28. Prior to this decision of the United States Supreme Court, the District Court for the Northern District of Ohio held that an involuntarily committed mentally retarded person had a due process right to treatment in the least restrictive environment. *Davis v. Balson* (N.D. Ohio 1978), 461 F.Supp. 842.

In *Nicoletti,* the court considered whether Ohio's statutory scheme for providing services for the mentally retarded created a due process property interest, such that persons involuntarily committed had a constitutional right to institutionalization in a facility meeting federal standards.

The court noted that pursuant to R.C. Chapter 5123, MRDD is required to maintain, operate, manage and govern all state institutions for the care, treatment and training of the mentally retarded. 740 F.Supp. at 1284, citing R.C. 5123.03. MRDD is required by R.C. 5123.16 to maintain all institutions in substantial compliance with Title XIX of the Social Security Act. *Id.*

The court also noted that Ohio law provides an extensive "Bill of Rights" for the mentally retarded, including the right to an appropriate, safe and sanitary living environment (R.C. 5123.62[B] ), and to receive appropriate care and treatment in the least intrusive manner possible (R.C. 5123.62[G] ). *Nicoletti.* Further, the mentally retarded have the right to sue to enforce these rights. *Nicoletti,* citing R.C. 5123.64(B)(3). The court concluded that mentally retarded persons admitted to state institutions have a due process property right to be cared for in an institution meeting the standards of the Social Security Act. *Nicoletti.*

■ We agree with MRDD that the current residents of the Cambridge Developmental Center have a constitutional right to treatment in a facility which meets Medicaid standards, including one which does not exceed licensed capacity. However, as a mentally retarded person properly involuntarily committed by the Probate Court of Tuscarawas County, the merits of which commitment are uncontested by MRDD, Roger Wayne Blackman also has a constitutionally protected right to treatment in an appropriate facility, which right is clearly infringed upon by the application of R.C. 5123.76(C)(1)(a). Thus, we must

determine whether this infringement is unconstitutional, or whether it is justified by an appropriate state interest.

■ The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated shall be treated alike." *Assn. for Retarded Citizens of North Dakota v. Olson* (D.N.D.1982), 561 F.Supp. 473, 489, citing *Plyler v. Doe* (1982), 457 U.S. 202, 215–216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, 798–799. Generally, disparity in treatment between similarly situated persons is constitutional if it bears some fair relationship to a legitimate public purpose. *Olson.* However, when this difference in treatment infringes on a fundamental right, the court must determine whether the difference is specifically tailored to serve a compelling governmental interest. *Id.*

■ As discussed earlier, as an involuntarily committed mentally retarded person, Blackman has a fundamental right to care and appropriate treatment in accordance with Ohio's statutory scheme. R.C. 5123.76(C)(1)(a) treats him differently from other similar persons, as it denies him such treatment solely because he is number one hundred forty-three on the list of persons committed, rather than number one hundred forty-one.

We thus must consider whether the statute is narrowly tailored to serve a compelling state interest.

■ The state clearly has a compelling state interest in keeping its facilities in accordance with federal standards, to avoid denying residents of such facilities their constitutional rights. However, the statute in question is not precisely tailored to serve this interest. Rather than ensuring that all persons entitled to such treatment and care receive it, the statute serves as a "cap," limiting the number of involuntarily committed persons to whom Ohio will provide services which the probate court determines to be necessary. As such, the statute places the rights of persons previously voluntarily committed and the state's monetary concerns over the individual patient's right to treatment. This result is antithetical to the principle upon which this country was based. If we are called upon to prioritize the patient's right to treatment with the interests of the institution and the state, there is only one conclusion we can constitutionally reach: the right of the patient must prevail.

In *Wyatt v. Stickney* (M.D.Ala.1972), 344 F.Supp. 373, cited with approval by *Davis v. Watkins* (N.D. Ohio 1974), 384 F.Supp. 1196, the court refused to recognize the unavailability of funds as justification for failure to provide appropriate treatment, stating at 377–378:

"The Court stresses, however, the extreme importance and the grave immediacy of the need for proper funding of the State's public mental health facilities. The responsibility for appropriate funding ultimately must fall, of course, upon

the State Legislature and, to a lesser degree, upon the defendant Mental Health Board of Alabama. For the present time, the Court will defer to those bodies in hopes that they will proceed with the realization and understanding that what is involved in this case is not representative of ordinary governmental functions such as paving roads and maintaining buildings. Rather, what is so inextricably intertwined with how the Legislature and Mental Health Board respond to the revelations of this litigation is the very preservation of human life and dignity. Not only are the lives of the patients currently confined at Bryce and Searcy at stake, but also at issue are the well-being and security of every citizen of Alabama."

The *Wyatt* court refused to enjoin further commitments until the state complied with the proper standards, as the court was fearful that doing so would "serve only to punish and further deprive Alabama's mentally ill." *Id.* at 378.

R.C. 5231.76(C)(1)(a) unconstitutionally enjoins further involuntary commitments until such time as additional space opens up in Ohio's existing institutions. MRDD has taken upon itself the obligation to conform to Medicaid standards. It has taken upon itself the treatment of the mentally retarded of Ohio, who have a right to treatment, enforceable under the laws of this state.

Once a court makes legitimate findings which require the institutionalization of a mentally retarded person, MRDD is required and mandated to provide that service. R.C. 5123.76(C)(1)(a) is an unconstitutional deprivation of this guaranteed right to treatment.

Both assignments of error are overruled.

The judgment of the Tuscarawas County Common Pleas Court, Probate Division, is affirmed.

*Judgment affirmed.*

GWIN, P.J., and FARMER, J., concur.