[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 471.]

IN RE HAYS:  OHIO DEPARTMENT OF MENTAL HEALTH, APPELLANT, *v.*
CLERMONT COUNTY ALCOHOL, DRUG ADDICTION AND MENTAL HEALTH
SERVICES BOARD, APPELLEE.

[Cite as *In re Hays*, 1995-Ohio-46.]

*Probate Court possesses jurisdiction to issue an order of involuntary commitment for mental health treatment—Jurisdiction to order state to assume cost of mental health treatment which is integral to commitment determination—Mental health services which are the financial responsibility of the state.*

1.  A county probate court possesses jurisdiction to issue an order of involuntary commitment for mental health treatment pursuant to R.C. 2101.24 and 5122.15.  (*In re Hamil* [1982], 69 Ohio St.2d 97, 23 O.O. 3d 151, 431 N.E.2d 317, distinguished.)

2.   Where a county has developed a mental health plan pursuant to R.C. 340.03(A)(1) and the plan has been approved by the Director of Mental Health pursuant to R.C. 5119.61(L), the county, pursuant to R.C. 340.011, is not financially obligated to fund services beyond those encompassed in the plan.  Consequently, any mental health services required by law to be provided to those persons needing such services which are not encompassed within the plan are the financial responsibility of the state of Ohio.

3.  A probate court does not exceed its jurisdiction when it orders that the state assume the cost of mental health treatment which is integral to the commitment determination but for which no provision has been made in the mental health plan developed by the county and approved by the state.

(No. 93-1689—Submitted May 11, 1994—Decided October 5, 1994.)

CERTIFIED by the Court of Appeals for Hamilton County, No. C-920118.

———————————

**{¶ 1}** Respondent, Vickie R. Hays, is a woman thirty-nine years of age who has been diagnosed as a paranoid schizophrenic. On August 15, 1991, she arrived at the home of her sister in a disheveled condition after a disappearance of six weeks. She apparently was under the impression that she was a mouse. On that date, her sister, Wilma Hays, submitted an affidavit to the Clermont County Probate Court requesting that the respondent be involuntarily confined in a mental health facility. In response to the request, the Clermont County Probate Court issued an order of detention pursuant to R.C.5122.11. On August 15, 1991, the Clermont County Probate Court transferred jurisdiction to the Hamilton County Probate Court. On August 16, 1991, the Hamilton County Probate Court issued a temporary order of detention which directed that respondent be detained at the Pauline Warfield Lewis Center ("Lewis Center") -- a mental health facility operated by appellant, Ohio Department of Mental Health in Cincinnati, Ohio. The order was executed by the Hamilton County Sheriff on August 19, 1991. On August 21, 1991, a hearing was conducted by the Hamilton County Probate Court. Following the hearing, the court referee ordered respondent to be placed in the care of appellee, the Clermont County Alcohol, Drug Addiction and Mental Health Services ("ADAMHS") Board for treatment at Lewis Center.

**{¶ 2}** On September 12, 1991, Charles Feuss, M.D., Director of the Lewis Center, requested an order of continued commitment with respect to respondent. On October 30, 1991, a hearing was held before a referee of the Hamilton County Probate Court, wherein evidence was adduced supporting the placement of respondent at Buckeye House, a group home in Butler County, as the least restrictive environment for treatment of her. At the conclusion of the hearing, the referee placed respondent in the care of appellee. On October 31, 1991, another hearing was held, wherein appellant was represented by an assistant attorney general. On November 15, 1991, the referee issued an order concluding that respondent was in need of twenty-four-hour supervised placement short of

hospitalization. The referee further concluded that Clermont County lacked such a facility, and that a placement conforming to the above criteria was the Buckeye House in Butler County, while treatment was to be provided on an outpatient basis at the Clermont County Counseling Center. Inasmuch as Clermont County lacked the funds to provide for such placement, the referee ordered appellant to provide the funds necessary to carry it out. Thereafter, appellant filed objections to the report of the referee. On December 4, 1991, following a full hearing, the referee confirmed his previous order of October 31, 1991. On January 21, 1992, the Hamilton County Probate Court overruled the objections to the report of the referee and approved it. On July 21, 1993, the First District Court of Appeals affirmed. Finding its decision to be in conflict with the decision of the Twelfth District Court of Appeals in *In re Berger* (Feb. 16, 1993) Clermont App. No. CA92-06-065, unreported, the appellate court certified the record of the case to this court for review and final determination.

———————————

*Lee I. Fisher,* Attorney General and *David J. Kovach,* Assistant Attorney General, for appellant.

*Donald W. White*, Clermont County Prosecuting Attorney, and *James A. Shriver,* Assistant Prosecuting Attorney, for appellee.

*Winnifred Weeks* and *Joseph H. Brockwell*, urging affirmance in part for *amicus curiae*, Ohio Legal Rights Service.

*Hugh F. Daly, Genevieve Gomez* and *Frank Wassermann*, Legal Aid Society of Cincinnati, urging affirmance for *amici curiae*, Drop Inn Center Shelterhouse, Free Store/Food Bank and the Greater Cincinnati Coalition for the Homeless.

———————————

**WILLIAM SWEENEY, J.**

I

{¶ 3} The present controversy concerns the authority of a probate court to issue an order of involuntary commitment for mental health treatment and to require the Ohio Department of Mental Health to assume the cost of such treatment. The jurisdiction of probate courts to conduct commitment hearings is set forth in R.C. 2101.24(A). This section provides in relevant part:

"(2) In addition to the exclusive jurisdiction conferred upon the probate court by division (A)(1) of this section, the probate court shall have exclusive jurisdiction over a particular subject matter if both of the following apply:

"(a) *Another section of the Revised Code expressly confers jurisdiction over that subject matter upon the probate court.*

"(b) No section of the Revised Code expressly confers jurisdiction over that subject matter upon any other court or agency.

"***

"(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." (Emphasis added.)

{¶ 4} One of the sections of the Revised Code to which R.C. 2101.24(A)(2)(a) refers is R.C. 5122.15(A), which governs involuntary confinement proceedings. This subsection provides:

"(A) Full hearings shall be conducted in a manner consistent with this chapter and with due process of law. *The hearings shall be conducted* pursuant to section 2945.40 of the Revised Code in all cases in which the respondent is a person found not guilty by reason of insanity, and *in all other cases, by a judge of the probate court or a referee designated by a judge of the probate court*, and may be conducted in or out of the county in which the respondent is held. Any referee designated under this division shall be an attorney."(Emphasis added.)

4

**{¶ 5}** R.C. 5122.15 also addresses the criteria governing the authority of the probate court to render a placement decision. In this regard, R.C. 5122.15(C) and (E) provide:

"(C)   *If, upon completion of the hearing, the court finds clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order, the court shall order the respondent*, for a period not to exceed ninety days to:

"(1)   A hospital operated by the department of mental health if the respondent is committed pursuant to division (D) of section 2945.38 or section 2945.40, 5120.17, or 5139.08 of the Revised Code;

"(2) A nonpublic hospital;

"(3) The veterans' administration or other agency of the United States government;

"(4) A board of alcohol, drug addiction, and mental health services or agency the board designates;

"(5) Receive private psychiatric or psychological care and treatment; or

"(6) *Any other suitable facility or person consistent with the diagnosis, prognosis, and treatment needs of the respondent*.

"***

"(E) *In determining the place to which, or the person with whom, the respondent is to be committed, the court shall* consider the diagnosis, prognosis, preferences of the respondent, and projected treatment plan for the respondent and *order the implementation of the least restrictive alternative available* and consistent with treatment goals and, in the case of a person found not guilty by reason of insanity, with public safety.  If the court determines that the least restrictive alternative available that is consistent with treatment goals is inpatient hospitalization, the court's order shall so state."  (Emphasis added.)

**{¶ 6}** The probate court therefore possesses the statutory authority and duty to place a mentally ill individual in the least restrictive treatment alternative available. In support of its view that no such authority exists, appellant relies upon *In re Hamil* (1982), 69 Ohio St.2d 97, 23 O.O.3d 151, 431 N.E.2d 317. *Hamil* concerned the authority of juvenile courts to order such commitment. However, such courts do not possess the jurisdiction conferred by R.C. 2101.24 and 5122.15(A). The distinction between the jurisdiction of juvenile and probate courts was expressly recognized in *Hamil*, wherein it was stated:

"From this section [R.C. 2151.23(A)(4)] Jeffrey's parents conclude a Juvenile Court which has jurisdiction over a mentally-ill juvenile subject to hospitalization by court order, *is invested with all powers inherent in the Probate Court, including the grant of plenary power found in R.C. 2101.24.* Jeffrey's parents contend that this grant of plenary power enables the court to fully dispose of any matter properly before it, including resolving any financial aspects necessary to implement their disposition. In order to reach this conclusion one must ignore the language of R.C. 2151.23(A)(4), which only grants the Juvenile Court those powers found in R.C. Chapters 5122 and 5123, *and does not bestow upon it those powers found in R.C. Chapter 2101.* Consequently, unless another statute exists which affirmatively grants the Juvenile Court authority to order ODMH to pay for Jeffrey's care in a private psychiatric facility, the courts below were acting beyond the scope of their jurisdiction when they made such orders. Jeffrey's parents contend R.C. 5122.15 authorizes the action taken by the lower courts. We disagree." (Emphasis added.) 69 Ohio St.2d at 100-101, 23 O.O.3d at 153, 431 N.E.2d at 319.

**{¶ 7}** We therefore conclude that a county probate court possesses jurisdiction to issue an order of involuntary commitment for mental health treatment pursuant to R.C. 2101.24 and 5122.15.

II

**{¶ 8}** Notwithstanding the authority of the probate court to order such placement, appellant further contends that the probate court lacks the jurisdiction to order the Ohio Department of Health to pay for treatment. In support of this view, appellant cites the following language in *Hamil*:

"We agree a civil committee, such as Jeffrey, has a statutory right to be placed in the least restrictive environment *available; however, appellees' argument completely misinterprets the word 'available.' Adhering to the construction proposed by appellees, any time a less restrictive alternative or environment exists, regardless of cost, a civil committee must be transferred to that locale or released from custody*. Surely when the General Assembly adopted R.C. 5122.15(E) and (F) it did not intend the state of Ohio to assume the cost of sending mentally ill individuals to expensive, private, non-public facilities, simply because those facilities might offer less restrictive treatment alternatives. The cost of fostering such a policy might prove to be astronomical.

"***

"*Unfortunately, economic considerations are also prevalent in determining the 'availability' of a facility within the meaning of R.C. 5122.15(E) and (F)*. If the supervisor of an institution designated within one of the alternatives listed in R.C. 5122.15(C)(2) through (6) refuses to accept a committee because he or his family cannot guarantee payment for the cost of care, then the least restrictive alternative which can be said to be 'available' is a state hospital. Applying this interpretation to the instant case, if Jeffrey Hamil's parents were unable to guarantee payment of the cost of care at Bellefaire, then Bellefaire was not an 'available' alternative. The Juvenile Court then had the option of continuing Jeffrey's commitment at Sagamore Hills or transferring Jeffrey to another state hospital, since a state hospital would be the only alternative 'available.'" (Emphasis added in part.) 69 Ohio St.2d at 103-104, 23 O.O.3d at 154-155, 431 N.E.2d at 320-321.

**{¶ 9}** The contention of appellant regarding the economic implications of unrestricted placements is not inconsequential. However, in the present context, it is not persuasive. As an initial matter, appellant has failed to demonstrate that placement of respondent in Buckeye House and the provision of outpatient treatment at Clermont County Counseling Center were more expensive than hospitalization at the Lewis Center. Second, *amici* Drop Inn Center Shelterhouse et al. correctly observe that the economic analysis of *Hamil* has been superseded by the decision of this court in *In re Burton* (1984), 11 Ohio St.3d 147, 11 OBR 465, 464 N.E.2d 530. *Burton*, *supra*, described the Ohio statutory scheme for the treatment of the mentally ill as follows:

"Although all states provide for the commitment of mentally ill persons, the statutory provisions for treatment are quite divergent. A small number of jurisdictions either do not specifically provide for treatment or refer vaguely to the manner of treatment. Other statutes indicate that *treatment shall be provided to the extent that funds and facilities are available. Still other jurisdictions place an affirmative obligation on the state to treat patients committed to its institutions and provide the patient with an unqualified right to treatment. Ohio falls within this latter type of provision*. (Emphasis added.) 11 Ohio St.3d at 152, 11 OBR at 469, 464 N.E.2d at 536.

**{¶ 10}** Despite this statutory obligation to provide treatment and the authority of probate courts, after a hearing, to order the appropriate treatment, there nevertheless arises the question of the allocation of payment for such treatments between the counties and the state. Of obvious concern is the risk that counties would plead poverty when treatment of their mentally ill citizens is at issue and insist that the state assume the cost of such treatment. However, the Revised Code appears to provide a mechanism for determining the proper allocation in a particular case.

{¶ 11} As observed by *amici*, R.C. 340.03(A)(1)(c) requires a county mental health board to develop a plan for delivery of mental health services and submit it to the state. The mental health plan for Clermont County was in fact approved by the state. Once a plan is approved, a county is not obligated to provide funding for services which are not included therein. In this regard, R.C. 340.011(B) provides:

"Nothing in Chapter 340., 3793., 5119., or 5122. of the Revised Code shall be construed as requiring a board of county commissioners to provide resources beyond the total amount set forth in a community mental health plan, as developed and submitted under section 340.03 of the Revised Code, to provide the services listed in section 340.09 of the Revised Code, and nothing in those chapters shall be construed as requiring a board of county commissioners to provide resources beyond the total amount set forth in a plan for alcohol and drug addiction services, prepared and submitted in accordance with sections 340.033 and 3793.05 of the Revised Code, to provide alcohol and drug addiction services."

{¶ 12} Given the affirmative obligation of the state to provide treatment, the authority of the probate court to determine the appropriate treatment in a particular case, and the lack of a duty of the county mental health board to provide services beyond those funded in its mental health plan, it falls to the state to fund those treatment options allocated to it by statute and ordered by a probate court.

{¶ 13} The authority of a probate court to issue an order to the state to provide funding is expressly conferred by R.C. 2101.24(C), inasmuch as payment for the treatment is in aid of its jurisdiction to adjudicate a matter properly before it (*i.e.*, the determination of the least restrictive environment for commitment of a mentally ill individual).

{¶ 14} It is our further determination, therefore, that where a county has developed a mental health plan pursuant to R.C.340.03(A)(1) and the plan has been approved by the Director of Mental Health pursuant to R.C. 5119.61(L), the county,

pursuant to R.C. 340.011, is not financially obligated to fund services beyond those encompassed in the plan. Consequently, any mental health services required by law to be provided to those persons needing such services which are not encompassed within the plan are the financial responsibility of the state of Ohio. A probate court does not exceed its jurisdiction when it orders that the state assume the cost of mental health treatment which is integral to the commitment determination but for which no provision has been made in the mental health plan developed by the county and approved by the state.

{¶ 15} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

_____