IN RE PARKER.

(No. L-82-091—Decided August 6, 1982.)

*Mr. Francis Frey* and *Mr. George J. Conklin,* for appellee.

*Mr. William J. Brown,* attorney general, and *Ms. Nancy Marakas,* for appellant Ohio Dept. of Mental Retardation and Developmental Disabilities.

CONNORS, P.J. This cause comes on appeal from the judgment of the Court of Common Pleas of Lucas County, Juvenile Division, ordering the state of Ohio, Department of Mental Retardation and Developmental Disabilities (hereinafter "ODMRDD") to provide supervisory day care services to Robbin Parker.

Robbin Parker is a fifteen-year-old autistic girl. The trial court found that she exhibits behavior similar to that of a profoundly retarded girl, and that she needs constant supervision. Robbin's mother, Mrs. Bobbie Parker, is employed during the day. Since approximately 1978 to date, Robbin has been receiving day care services at the Northwest Ohio Developmental Center (hereinafter "NODC"), a facility of ODMRDD. Mrs. Parker picks Robbin up after work and Robbin lives at home with her mother. The day care services were provided voluntarily by NODC until 1981. In approximately June 1981, NODC notified Mrs. Parker that it would no longer provide the day care services for Robbin due to staff reductions and budget restrictions. Thereafter, the Lucas County Children Services Board filed a complaint in dependency praying that Robbin be found dependent and that the court order NODC to continue to provide day care services for Robbin.

The trial court, in an adjudicatory hearing, found Robbin to be a dependent child. Pursuant to a disposition hearing, the trial court ordered that the ODMRDD, through NODC, must con-

tinue to provide day care services for Robbin. From the judgment of the trial court, appellant now appeals.

Appellant's first and second assignments of error state that:

"I. The trial court erred in finding that the Department of Mental Retardation and Developmental Disabilities has a statutory obligation under [R.C.] Sections 5123.02 and 5123.351 to provide day care services to Robbin Parker at the Northwest Ohio Developmental Center.

"II. The trial court erred by unreasonably and arbitrarily ordering the Northwest Ohio Developmental Center to provide supervised day care services to Robbin Parker."

The trial court held that R.C. 5123.02 and R.C. 5123.351 particularly, required the ODMRDD to provide services to the mentally retarded and developmentally disabled citizens of the state of Ohio. The trial court also held that within said statutory duties is the duty to provide day care services for Robbin Parker.

It is undisputed that the ODMRDD has a statutory duty to provide services to mentally retarded and developmentally disabled citizens. R.C. 5123.351 provides that:

"The director of mental retardation and developmental disabilities with respect to the eligibility for state reimbursement of expenses incurred by facilities and programs established and operated under Chapter 5126. of the Revised Code for mentally retarded and developmentally disabled persons, shall:

"(A) Make such rules as may be necessary to carry out the purposes of Chapter 5126. and sections 5123.35, 5123.351, and 5123.36 of the Revised Code;

"(B) Define minimum standards for qualifications of personnel, professional services, and in-service training and educational leave programs;

"(C) Review and evaluate community programs and make recommendations for needed improvements to county boards of mental retardation and developmental disabilities and to program directors;

"(D) Withhold state reimbursement, in whole or in part, from any county or combination of counties for failure to comply with Chapter 5126. or section 5123.35 or 5123.351 of the Revised Code or rules of the department of mental retardation and developmental disabilities;

"(E) Withhold state funds from an agency, corporation, or association denying or rendering service on the basis of race, color, sex, religion, ancestry, national origin, handicap, or inability to pay;

"(F) Provide consultative staff service to communities to assist in ascertaining needs and in planning and establishing programs;

"(G) Establish, operate, develop, and fully support a clinic or other mental retardation programs in an area where he determines that services are urgently needed but local funds for the support of the program are not available;

"(H) Provide state funds to county boards of mental retardation and developmental disabilities, in addition to those allocated pursuant to section 5123.36 of the Revised Code, for special programs or projects he considers necessary, but for which local funds are not available;

"(I) Provide state funds for existing mental retardation clinics and programs financed partly by state funds when he considers it necessary."

R.C. 5123.02 provides as follows:

"The department of mental retardation and developmental disabilities shall:

"(A) Promote comprehensive statewide programs and services for the mentally retarded and their families wherever they reside in the state. These programs shall include public education, prevention, diagnosis, treatment, training, and care;

"(B) Provide administrative leadership for statewide services which include residential facilities, evaluation centers, and community classes which are wholly

or in part financed by the department of mental retardation and developmental disabilities as provided by section 5123.26 of the Revised Code;

"(C) Develop and maintain, to the extent feasible, data on all services and programs for the mentally retarded provided by governmental and private agencies;

"(D) Make periodic determinations of the number of retarded persons requiring services in the state;

"(E) Provide leadership to local authorities in planning and developing community-wide services for the mentally retarded and their families;

"(F) Promote programs of professional training and research in cooperation with other state departments, agencies, and institutions of higher learning."

The trial court, however, held that the broad statutory obligations of the Revised Code include the specific duty to provide *day care* services at the NODC. (Emphasis ours). This was error.

The decision as to how the ODMRDD is to carry out its statutory obligations is an administrative decision based upon the needs of the citizens of Ohio and the budgetary confines in which the agency must operate. The statutes impose the obligation of establishing and maintaining programs and facilities for the mentally retarded upon the ODMRDD, not upon the courts. The needs of the people typically exceed the programs and facilities which can be operated within budgetary constraints. It is the function of the ODMRDD to establish priorities and to decide how to best fulfill its function within the limits of its budget. It is simply impossible to have the courts, on a case-by-case basis, ordering the ODMRDD to implement specific facilities and programs. This is beyond the judicial function and exceeds the powers of the courts.

The NODC is a residential facility. Its primary function is to provide *residential* care and services to clients who have been involuntarily or voluntarily committed to its facilities. The trial court, in effect, ordered the ODMRDD and NODC to establish a *day care program,* when that agency was simultaneously facing budget cutbacks, making it more difficult to carry out its primary objective of providing residential facilities and care.

In view of the facts of this case, it is obvious that the trial court felt a great deal of sympathy, as does this court, for the mother of Robbin Parker. However, facts do not make statutory law. We, as was the trial court, were presented with evidence that Robbin's mother is making a serious effort to solve the problem she is faced with. She is faced with a dilemma, having gone from a part-time job to that of a full-time position as a secretary for a large corporation. She is willing to pay for the time Robbin would be at NODC while she is working. She is unwilling to have Robbin placed at NODC on a residential basis. In essence, she seeks to require the state to be a part-time baby sitter, for which she is willing to pay. In construing the statutes involved, we do not find that NODC is required to furnish this kind of help. To require the state to furnish part-time baby sitters would open many floodgates.

Further, the record indicates that the NODC also was sympathetic to Robbin Parker's needs. The NODC cooperated with Robbin's mother and other interested parties in attempting to find another agency or private party who could provide care for Robbin during the day. Alternative care for Robbin, however, apparently could not be found.

We are cognizant of the policy of providing the least restrictive environment available for the mentally retarded. See R.C. 5122.15 (E) and (F); *In re Hamil* (1982), 69 Ohio St. 2d 97 [23 O.O.3d 151]. It is unfortunate, but apparently no other environment, short of commitment, was available for Robbin Parker. We are also cognizant of the policy of maximizing the assimilation of mentally retarded persons

into the ordinary life of the communities in which they live and to reduce the institutionalization of such persons as much as practicable. See R.C. 5123.67. However, if day care services are to be provided in the Lucas County area, where no such services or programs have been instituted, they must originate through the administrative and legislative process, not through the judiciary. We conclude that the juvenile court exceeded its power in ordering the NODC to provide day care services for Robbin Parker and, accordingly, appellant's first and second assignments of error are found well-taken.

Appellant's third assignment of error states that:

"III. The trial court erred by not permitting appellant's counsel to object to testimony at the September, 1981 hearing."

The hearing which appellant refers to was the adjudication of dependency. Appellant's third assignment of error is not well-taken for the following reasons. First, appellant was not a party to the adjudication of dependency within the meaning of Juv. R. 2 (16). Since appellant was not a party, it has no right to object. Second, assuming appellant could have been made a party, appellant failed to request that it be joined and, accordingly, waived any right to object on appeal. See Civ. R. 19 (A). Third, the record reveals that at the end of the adjudication of dependency hearing, the trial court stated the following:

"Now for the purpose of disposition, everything that we've taken on adjudication will be included as part of the dispositional hearing. Is there any objection to that?"

Counsel for appellant replied that "I have no objection, Your Honor." Quite clearly, appellant was given an opportunity to object, but chose not to. Accordingly, any right to object was waived.

On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Court of Common Pleas of Lucas County, Juvenile Division, is modified. The judgment of said court ordering the NODC to provide day care services to Robbin Parker is reversed. The judgment of said court concerning appellant's third assignment of error is affirmed. This cause is remanded to said court for assessment of costs. Costs assessed against appellee.

*Judgment accordingly.*

BARBER, J., concurs.

DOUGLAS, J., dissents.

DOUGLAS, J., dissenting. Upon the facts of this case, I respectfully dissent. I would affirm the judgment of the trial court as to its findings concerning Robbin Parker and its orders pursuant thereto.