**In re J.D., (Franklin County Children Services, Appellant).**

[Cite as *In re J.D.,* 172 Ohio App.3d 288, 2007-Ohio-3279.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–995.

Decided June 28, 2007.

Ron O'Brien, Franklin County Prosecuting Attorney, and Katherine J. Press, for appellee.

Robert J. McClaren, for appellant, Franklin County Children Services.

Samuel H. Shamansky, guardian ad litem.

BRYANT, Judge.

{¶ 1} Appellant, Franklin County Children Services ("FCCS"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, ordering FCCS to place J.D., a delinquent minor, at Cove Prep Residential Treatment Facility ("Cove Prep"). Because the juvenile court does not possess the statutory authority to order placement at a specific residential treatment facility after granting FCCS legal custody of J.D., we reverse.

{¶ 2} On February 21, 2006, a magistrate in the trial court adjudicated J.D. a delinquent after J.D. admitted to a single count of rape. At the dispositional hearing on April 20, 2006, the magistrate committed J.D. to the legal custody of the Department of Youth Services ("DYS") for a minimum of one year and a maximum not to exceed age 21. The magistrate suspended commitment to DYS on condition that J.D. successfully complete an intensive probation program.

{¶ 3} J.D. was placed on probation until April 20, 2008, ordered to complete 95 hours of community service through the Juvenile Restitution Program, and ordered to pay $475 in restitution. At the same time, the magistrate also temporarily committed J.D. to the custody of FCCS, ordered FCCS to place J.D. at Cove Prep in Latrobe, Pennsylvania, and granted FCCS temporary custody of J.D. for placement at Cove Prep.

{¶ 4} FCCS and J.D. filed objections to the magistrate's order. FCCS asserted that the magistrate's order exceeded the court's statutory authority when it specifically ordered FCCS to place J.D. at Cove Prep. FCCS further claimed that the magistrate erred in concluding that no alternative placements were available for J.D. in Ohio.

{¶ 5} The juvenile court overruled the objections to the magistrate's decision, reasoning that because this court has held that the juvenile court has authority to order FCCS generally to place a delinquent child in a residential treatment facility, the court likewise can order placement at a specific facility. In support of its reasoning, the court noted that R.C. 2152.18(A) specifically prohibits the juvenile court from designating a specific facility after committing a child to DYS but that no parallel provision restricts the court concerning FCCS commitments. The trial court determined that had the legislature intended to limit the juvenile court's authority when FCCS had custody of a child, it would have done so in the statute; in the absence of such a provision, the court concluded, no similar restriction exists. The juvenile court adopted the magistrate's decision and entered judgment accordingly.

{¶ 6} FCCS appeals, assigning the following errors:

### ASSIGNMENT OF ERROR NUMBER ONE

R.C. 2151.353(A)(2), which allows the court to place a child into the custody of FCCS, does not contain any provision, which allows the court to designate a specific placement for the child. Thus, the Juvenile Court exceeds its statutory authority by mandating a placement of the child at Cove Prep, a specific residential placement facility, to FCCS.

### ASSIGNMENT OF ERROR NUMBER TWO

The Court erred in finding that no in state treatment was available for the child.

### ASSIGNMENT OF ERROR NUMBER THREE

The Juvenile Court violated the doctrine of separation of powers by ordering FCCS to place the child in a specific placement.

## I. First and Third Assignments of Error

{¶ 7} Because the first and third assignments of error are interrelated, we address them together. In the first assignment of error, FCCS argues that although the juvenile court had authority to order J.D. into residential treatment, it exceeded its statutory authority in first committing J.D. to FCCS's custody and then ordering FCCS to place J.D. into a specific facility. The state argues in response that based on R.C. 2152.19, the juvenile court has authority to make any disposition reasonably calculated to achieve the purposes set forth in R.C. 2152.01(A), even if the disposition is not enumerated in the statute.

{¶ 8} Juvenile courts are courts of limited jurisdiction whose powers are created solely by statute. *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, at ¶ 25. The juvenile court may not order FCCS to place J.D. at a specific facility unless it possesses the statutory authority to do so. Because determining whether the juvenile court possessed the necessary statutory authority to place J.D. at Cove Prep is a legal issue, we apply a de novo standard of review. *Pep Boys v. Vaughn*, Franklin App. No. 04AP-1221, 2006-Ohio-698, 2006 WL 350288 (noting that when an appellate court is faced with a question of law, the appropriate standard of review is de novo).

{¶ 9} R.C. Chapters 2151 and 2152 outline the juvenile court's authority to make dispositions regarding abused, neglected, dependent, and delinquent children. If a child is adjudicated delinquent, R.C. 2152.19(A) allows the court, in addition to any other disposition "authorized" or "required" by R.C. Chapter 2152, to make any of the following orders of disposition: (1) issue any order authorized by R.C. 2151.353 "for the care and protection of an abused, neglected, or dependent child; (2) Commit the child to the temporary custody of any school, camp, institution, or other facility operated for the care of delinquent children by the county * * * or by a private agency or organization, within or without the state, that is authorized and qualified to provide the care, treatment, or placement required * * *; (8) Make any further disposition that the court finds proper * * *." R.C. 2151.353, cited in R.C. 2152.19(A), provides that if a child is adjudicated abused, neglected, or dependent, the court may "[c]ommit the child to the temporary custody of a public children services agency * * * for placement in a certified foster home, or in any other home approved by the court." R.C. 2151.353(A)(2).

{¶ 10} The overriding purposes for dispositions regarding juvenile delinquents are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable * * * restore the victim, and rehabilitate the offender." R.C. 2152.01(A). Dispositions must "be reasonably calculated to achieve the overriding purposes set forth in this section, commensurate with and not demean-

ing to the seriousness of the delinquent child's * * * conduct and its impact on the victim." R.C. 2152.01(B). To the extent that they do not conflict with R.C. Chapter 2152, "the provisions of Chapter 2151. of the Revised Code apply to the proceedings under this chapter." R.C. 2152.01(C).

{¶ 11} To apply the statutory provisions governing a juvenile court's disposition of a delinquent child, we must determine the legislative intent. " 'The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it.' " *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11, quoting *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus. " '[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *Hairston,* at ¶ 12, quoting *Slingluff,* paragraph two of the syllabus. If a term or phrase is not ambiguous, a court must simply apply it. Id. A statute is ambiguous if its language is susceptible of more than one reasonable interpretation. Because R.C. 2152.19(A)(8) reasonably can be interpreted in more than one way, it is ambiguous, and we look beyond the words of the statute to construe the statute in a manner that reflects the legislative intent. *Gray v. Grange Mut. Cas. Co.,* Franklin App. No. 05AP–1199, 2006-Ohio-6370, 2006 WL 3491861.

{¶ 12} Legislation enjoys a presumption of constitutionality. *State v. Thompson* (2001), 92 Ohio St.3d 584, 586, 752 N.E.2d 276, citing *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.* (1999), 87 Ohio St.3d 325, 720 N.E.2d 901. "A statute will be given a constitutional interpretation if one is reasonably available." *Thompson,* 92 Ohio St.3d at 586, 752 N.E.2d 276, citing *State v. Keenan* (1998), 81 Ohio St.3d 133, 689 N.E.2d 929. Accordingly, we must give effect to the intent of the lawmakers based on the language of the statute while, at the same time, applying the statute in a constitutional manner.

{¶ 13} The parties do not dispute that pursuant to R.C. 2152.19(A)(1) and 2151.353(A)(2), the juvenile court was statutorily authorized to commit J.D. to the temporary custody of FCCS. The disputed issue resolves into whether, after granting FCCS legal custody, the court could properly order FCCS to place J.D. at Cove Prep, a residential treatment facility. Although FCCS acknowledges the court's authority to order FCCS to place a juvenile in an unspecified residential facility for treatment, as well as the court's authority to directly place a juvenile in a specific facility under R.C. 2152.19(A)(2), it denies that the court may dictate the specific facility to FCCS once the court has placed the juvenile in the custody of FCCS.

{¶ 14} In response to FCCS's argument, the state relies on the statutory authority for the court to "[m]ake any further disposition that the court finds proper." The state contends that R.C. 2152.19(A)(8) is so broadly worded that it grants the juvenile court considerable discretionary authority to fashion delinquency dispositions that are not specifically enumerated in the juvenile code, as long as the dispositions further the purposes of the juvenile statutes. *In re D.S.,* 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 6 (recognizing the juvenile court's "broad discretion to craft an appropriate disposition for a child adjudicated delinquent"); *In re Caldwell* (1996), 76 Ohio St.3d 156, 666 N.E.2d 1367 (holding that because the General Assembly included a catchall provision, which it did not have to do, the juvenile court had authority to impose consecutive commitments to DYS based on each delinquent act even though consecutive commitments were not specifically enumerated in the statutes at that time); *In re Walker,* Franklin App. No. 02AP–421, 2003-Ohio-2137, 2003 WL 1962419, ¶ 22 (recognizing the juvenile court's "broad discretion in fashioning orders specifically tailored to address each juvenile's particular treatment and rehabilitative needs" in order to effectuate the purposes and goals underlying the juvenile court system).

{¶ 15} Despite the broad statutory authority granted to the juvenile court in R.C. 2152.19(A)(8), the court's disposition regarding J.D. falls outside that authority. The juvenile court placed J.D. in the temporary custody of FCCS, giving legal custody of J.D. to FCCS. See 1999 Ohio Atty.Gen.Ops. No. 99–041. R.C. 2151.011(B)(19) defines "legal custody" as a "legal status that vests in the custodian the right to have physical care and control of the child and *to determine where and with whom the child shall live,*" including "the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." (Emphasis added.) See, also, Ohio Atty.Gen.Ops., supra (stating that legal custody includes the right to determine where and with whom the child will live). By granting FCCS custody of J.D., the juvenile court made FCCS his custodian for purposes of determining where and with whom J.D. would live. See R.C. 2151.011(B)(11) (defining "custodian" as "a person who has legal custody of a child or a public children services agency or private child placing agency that has permanent, temporary, or legal custody of a child"); *In re Sanders* (Feb. 25, 1991), Cuyahoga App. No. 57460, 72 Ohio App.3d 655, 595 N.E.2d 974.

{¶ 16} In *Sanders,* the juvenile court ordered DYS not only to place the delinquent child at a specific private out-of-state school following the juvenile's probation violation but also to pay the cost of his care. The court of appeals reversed. The court explained that because DYS had legal custody of the child

when he violated his parole, the department, not the courts, had the right to determine where and with whom the child should live. Indeed, if a child is committed to DYS's custody, R.C. 2152.18(A) precludes a court from designating a specific facility for placement. As the juvenile court noted, no comparable language exists in the statutes pertaining to FCCS. However, the statutory limitation on the courts in relation to DYS appears premised on the more limited purpose of granting DYS custody of a delinquent. By comparison, the broader purposes for placing a child in the custody of FCCS make a specific statutory provision less effective in controlling the court's relation to FCCS. As a result, the reasoning of *Sanders* is persuasive.

{¶ 17} A public children services agency such as FCCS is responsible for providing assistance to children who are in need of public care or protective services. R.C. 5153.16. When legal custody is granted to FCCS, decisions related to normal incidents of custody are committed to the discretion of the agency. Stated another way, when the juvenile court grants custody of a child to FCCS, with custody goes the authority to determine the child's specific placement. How FCCS carries out its statutory obligations is an administrative decision based upon the child's needs and the budgetary confines within which the agency must operate.

{¶ 18} Our conclusion is consistent with the definition of "legal custody." To interpret the statute as the state urges would transform the juvenile court's broad discretion into unfettered discretion and vitiate the notion of legal custody by allowing the court to dictate to the custodian how to implement the custodian's legal responsibilities. Although R.C. 2152.19(A) specifically allows the juvenile court to make any other disposition authorized or required by R.C. Chapter 2152, nothing in R.C. Chapter 2152 authorizes or requires the juvenile court to order FCCS where to place a child after relinquishing custody to FCCS. Accordingly, we conclude the catchall provision, while indisputably broad, allows the juvenile court to make "any further disposition" consistent with the choices of dispositions provided to the court in the juvenile statutes. To that end, when the juvenile court commits a child to the custody of an agency such as FCCS, the statutes at issue give the agency, not the court, the discretion to determine at what facility to place the child.

{¶ 19} The doctrine of separation of powers, raised in FCCS's third assignment of error, bolsters the conclusion we reach through statutory interpretation. The doctrine of separation of powers arises from our tripartite democratic form of government. *Thompson,* supra. It recognizes that each branch of government has its own unique powers and duties separate and apart from the others. Id. Although the purpose of the doctrine is to create a system of checks and balances so that each branch maintains its integrity and independence, the

three branches need not be entirely separate and distinct. *Morrison v. Olson* (1988), 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569; *Mistretta v. United States* (1988), 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714. Nonetheless, in dealing with a legislative grant of authority, courts must consider whether a particular statute permits encroachment of one branch at the expense of another. *U.S. ex rel. Burch v. Piqua Engineering, Inc.* (S.D.Ohio 1992), 803 F.Supp. 115.

{¶ 20} Here, pursuant to R.C. 121.02(H), the Ohio Department of Job and Family Services ("ODJFS") is an administrative department of the state. ODJFS is administered by the director who, in turn, is appointed by the governor with the advice and consent of the senate. R.C. 121.03(E). Pursuant to R.C. 5153.166, the director of ODJFS adopts rules governing public children services agencies, such as FCCS. Accordingly, FCCS serves as an arm of the executive branch of government.

{¶ 21} Although courts generally have the right to order an agency to do what it has a legal obligation to do, the courts cannot tell the agency how to fulfill its obligation when the means of fulfilling that obligation are within the agency's discretion. *In re Hamil* (1982), 69 Ohio St.2d 97, 104, 23 O.O.3d 151, 431 N.E.2d 317 (stating that "[t]he courts in making decisions must keep the problems with which they deal in perspective" and "[t]he division of power as granted by the Constitution to the three branches of government must be kept in mind at all times").

{¶ 22} While FCCS has a duty to provide for the care and placement of children in its custody or protective supervision, how FCCS carries out its statutory obligations is an administrative decision based upon the child's needs and the budgetary confines within which the agency must operate. See *In re Parker* (1982), 7 Ohio App.3d 38, 7 OBR 41, 453 N.E.2d 1285 (holding that the trial court exceeded its power in ordering the Department of Mental Retardation and Developmental Disabilities to provide day-care services when those services were being eliminated because of staff reductions, because ordering the department to implement specific facilities and programs is beyond the judicial function and exceeds the power of the courts). To interpret R.C. 2152.19 as broadly as the state proposes would violate the doctrine of separation of powers as applied in this case, and allow the juvenile court to encroach upon the executive branch of state government.

{¶ 23} Accordingly, FCCS's first and third assignments of error are sustained.

{¶ 24} In the final analysis, although the juvenile court appropriately may offer guidance or suggestions to FCCS concerning a child's residence, the court's granting legal custody to the agency also grants the agency the authority to decide the specific residence. We have no doubt that the juvenile court had

J.D.'s best interests in mind, but the ultimate decision about J.D.'s specific placement rests with FCCS.

{¶ 25} Having sustained FCCS's first and third assignments of error, rendering moot the second assignment of error, we reverse the judgment of the juvenile court and remand this matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FRENCH and McGRATH, JJ., concur.