OPINION
{¶ 1} Defendant-appellant, T.S., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that adopted a magistrate's decision finding appellant delinquent by reason of committing aggravated vehicular homicide in violation of R.C. 2903.06(A)(2) and sentencing him accordingly. For the following reasons, we affirm that judgment.
 {¶ 2} On the night of October 28, 2005, E.S. went to a football game at Gahanna Lincoln High School. At the game, she and her friend E.K. decided to go driving together after the game. E.S., who just got her driver's license, drove to a gas station where she *Page 2 
received a phone call on her cell phone from her best friend, A.M. Following the phone call, E.S. and E.K. drove to a location on Hamilton Road to meet A.M. and appellant. After meeting, they drove away in two cars: E.S. drove her car with E.K. as a passenger and A.M. followed in a second car with appellant as a passenger. By this time, it was about 11:00 p.m.
 {¶ 3} The two cars traveled down Hamilton Road and turned left onto Morse Road.[1] The two cars then turned left onto Westerville Road, where A.M. pulled into a parking lot. E.S. followed her into the parking lot. When the cars stopped, appellant switched seats with A.M., and got into the driver's seat. E.S. then drove her car out of the parking lot onto Westerville Road. Appellant followed, now driving A.M.'s car. Appellant, age 14 at the time, did not have a driver's license and had never driven a car on a public road.
 {¶ 4} Ultimately, after several subsequent turns, both cars were traveling the same direction on Agler Road. Appellant was behind E.S. This portion of Agler Road is a straight and flat, poorly lit, two-lane asphalt road with a posted speed limit of 35 miles per hour.
 {¶ 5} Shortly after turning onto Agler Road, appellant began to drive faster to catch up with E.S.'s car. E.S. testified that she was driving about 45 miles per hour at the time. E.K. testified that it appeared that appellant wanted to pass them once or twice but could not due to oncoming traffic. Appellant ultimately did attempt to pass E.S. by driving into the oncoming lane of traffic. Appellant testified that he attempted to pass when E.S. *Page 3 
began to slow down as if she were turning into a driveway. E.S. testified that she did not slow down until appellant began to pass her, as she saw approaching oncoming traffic and wanted to give appellant room to pass. Evidence indicated that appellant was driving in excess of 60 miles per hour as he passed E.S. As appellant attempted to re-enter the right lane of traffic in front of E.S., appellant's car skidded off the road and ran into a tree. A.M. was thrown from the car and sustained multiple blunt force injuries. She later died from those injuries.
 {¶ 6} As a result of A.M.'s death, a complaint was filed in the trial court alleging that appellant was delinquent for committing one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2). Appellant denied the count and the case proceeded to an adjudicatory hearing. Appellant testified on his own behalf and stated that as he passed E.S. he had control of the car, but that A.M. grabbed the steering wheel and caused the car to go off the road and hit the tree. Nevertheless, the magistrate found appellant delinquent by reason of committing aggravated vehicular homicide. At a dispositional hearing, the magistrate committed appellant to the legal custody of the Department of Youth Services for an indefinite period of time not less than six months and not to exceed his 21st birthday. The magistrate also prohibited appellant from obtaining his driver's license until his 21st birthday. Appellant filed objections to the magistrate's decision. The trial court overruled those objections and adopted the magistrate's decision.
 {¶ 7} Appellant appeals and assigns the following errors:
 ASSIGNMENT OF ERROR I:
 The trial court violated [T.S.'s] rights to Due Process under the Fifth and Fourteenth Amendments to the United States *Page 4 
Constitution, Article I, Section 16 of the Ohio Constitution and Juvenile Rule 29(E)(4) when it adjudicated him delinquent of Aggravated Vehicular Homicide (F-3) absent proof of every element of the charge against him by sufficient, competent, credible evidence.
 ASSIGNMENT OF ERROR II:
 The trial court violated [T.S.'s] right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution when it adjudicated him delinquent of Aggravated Vehicular Homicide, when that finding was against the manifest weight of the evidence.
 ASSIGNMENT OF ERROR III:
 [T.S.'s] conviction and sentence is constitutionally infirm because the prosecutor adduced testimony that [T.S.] refused to make a statement to arresting officers. This improper use of [T.S.'s] post-arrest silence violated his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.
 ASSIGNMENT OF ERROR IV:
 The trial court erred in depriving [T.S.] of his right to apply for driving privileges because the statute does not provide for that sanction as a dispositional option for [T.S.'s] offense.
 ASSIGNMENT OF ERROR V:
 [T.S.] was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object to the court's suspension of his future ability to obtain a driver's license.
 {¶ 8} We will address appellant's assignments of error out of order. Appellant contends in his third assignment of error that the prosecutor improperly introduced evidence concerning his post-arrest silence. We disagree. *Page 5 
 {¶ 9} The night of the accident, appellant told responding officers that he was driving and that he did not have a driver's license. The officers also asked him what happened and appellant generally told them what occurred. He did not mention two facts: that he began to pass E.S. only when he thought she was slowing down to turn into a driveway, and that A.M. grabbed the steering wheel causing the car to run off the road. At the adjudicatory hearing, however, appellant testified to these facts. The prosecutor then cross-examined appellant about why he failed to tell the police these important facts. Appellant stated that the police did not ask him to give a full statement of what occurred.
 {¶ 10} In Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, the United States Supreme Court held that the use of a defendant's post-arrest, post-Miranda silence for impeachment purposes violates due process. Id. at 619. The Court later made it clear, however, that the same rule does not apply to a defendant's silence in the absence ofMiranda warnings when a defendant chooses to testify. Fletcher v.Weir (1982), 455 U.S. 603, 607, 102 S.Ct. 1309. "`[A]bsentMiranda warnings, there is no government action which induces a defendant to remain silent with an assurance that his silence would not be used against him.'" State v. Exum, Franklin App. No. 05AP-894,2007-Ohio-2648, at ¶ 38, quoting State v. Price (Jan. 31, 1995), Franklin App. No. 94APA07-1012; see, also, State v. Cooper (Nov. 18, 1999), Cuyahoga App. No. 75282 ("Where no governmental action induces a defendant to remain silent before an arrest, Doyle is inapplicable."). Thus, "it is clear that the actual administration of Miranda warnings, rather than the arrest and custodial interrogation, triggers the constitutional protection of Doyle." State v. Ospina (1992),81 Ohio App.3d 644, 650. See Exum, supra, at ¶ 38; State v. Scott, Lucas *Page 6 
App. No. L-01-1337, 2003-Ohio-1402, at ¶ 18 (Doyle inapplicable where record does not affirmatively show that Miranda warnings were given).
 {¶ 11} In the present case, appellant chose to testify on his own behalf, and there is no evidence of whether or not appellant was givenMiranda warnings. Thus, the constitutional protections of Doyle are not applicable, and the prosecutor could question appellant about his failure to initially provide important details about the accident to the police. Fletcher; supra, State v. Brown, Trumbull App. No. 2002-T-0077,2003-Ohio-7183, at ¶ 34 (no Doyle violation where defendant testified on his own behalf and did not receive Miranda warnings); State v.Thomas (Apr. 4, 1996), Cuyahoga App. No. 68130; Scott, supra, at ¶ 19 (finding no error in questions about post-arrest silence to defendant who testified on his own behalf and where no evidence described when defendant was advised of Miranda warnings).
 {¶ 12} The State also asked Detective Robert Purdy whether or not appellant ever stated that A.M. grabbed the steering wheel causing the car run to off the road. Detective Purdy denied that appellant made such a statement. For the reasons noted above, the trial court did not err when it permitted this testimony. Moreover, even if it had been error, appellant failed to object to this question on Doyle grounds and therefore, has waived that error on appeal absent plain error. State v.Stevenson (July 21, 2000), Erie App. No. E-94-002; State v. Rogers (Apr. 27, 1999), Muskingum App. No. 98 CA 14. In order to find plain error, an appellate court must determine that the outcome of the trial clearly would have been different but for the trial court's improper actions.State v. Waddell (1996), 75 Ohio St.3d 163, 166. However, even if an appellate court finds plain error, it is not required to correct it.State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Indeed, *Page 7 
plain error should be noticed and corrected "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We find no plain error. The magistrate rejected appellant's claim that A.M. caused the accident by grabbing the steering wheel based upon physical evidence that contradicted this claim. Appellant's failure to tell the police about this alleged fact did not factor into that decision. Thus, the outcome of this trial would not clearly have been different but for the detective's answer.
 {¶ 13} Appellant's third assignment of error is overruled.
 {¶ 14} In his first and second assignments of error, appellant challenges both the sufficiency of the evidence supporting his delinquency finding and the manifest weight of that evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will discuss the sufficiency of the evidence and manifest weight arguments separately.
 {¶ 15} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Page 8 
 {¶ 16} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v.Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 17} In order to find that appellant committed aggravated vehicular homicide, the State had to prove beyond a reasonable doubt that he recklessly caused the death of another while operating a motor vehicle. R.C. 2903.06(A)(2). A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result * * *." R.C.2901.22(C). Thus, the State had to prove that appellant, with heedless indifference to the consequences, perversely disregarded a known risk that his conduct was likely to cause the death of another. A risk is defined as a strong probability, as contrasted with a remote probability, that a certain result may occur. R.C. 2901.01(A)(7). "`A person is said to be reckless under the section when, without caring about the consequences, he obstinately disregards a known and significant possibility that his conduct is likely to cause a certain result or be of a certain nature, or that certain circumstances are likely to exist.'" Bexley *Page 9 v. Selcer (1998), 129 Ohio App.3d 72, 77, quoting State v. Pack (1996),110 Ohio App.3d 632, 636, quoting Legislative Service Commission Comment to R.C. 2901.22.
 {¶ 18} Appellant claims that while his conduct may have been negligent, the State failed to prove that he acted recklessly. We disagree. Appellant was 14-years old on the night of the crash. This was the first time appellant had ever driven a car on a public road. He did not have a driver's license. He had not received any formal driving education. Yet, during his first time driving a car on a public road, he chose to pass E.S. on a two-lane road at night at a speed almost twice the posted speed limit.
 {¶ 19} More significantly, appellant testified that he began to pass by crossing a double yellow line. Crossing a double yellow line is reckless conduct by itself. State v. Gayheart (Sept. 8, 1997), Warren App. No. CA97-01-001. Further, with a posted speed limit of 35 miles per hour, appellant chose to pass another car traveling in excess of 60 miles per hour on a dark two-lane road with oncoming traffic. The risk created by this conduct is obvious: a very inexperienced driver with no driver's license or formal training, driving at night, at a speed almost twice the posted speed limit, while passing a car in a no-passing zone, is likely to cause a serious accident. Appellant perversely disregarded this risk by his conduct that night.
 {¶ 20} Viewing the entirety of appellant's conduct that night in a light most favorable to the State, a rational trier of fact could have found that the State proved beyond a reasonable doubt that appellant was reckless. See State v. Kinney (Sept. 7, 1999), Madison App. No. CA99-01-001 (recklessness shown where defendant speeding and passing in a no-passing zone); State v. Simpson, Columbiana App. No. 05-CO-50,2006-Ohio-5837, at ¶ 20-21 (same). *Page 10 
 {¶ 21} When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' Thompkins, at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction."' Id.
 {¶ 22} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and to determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74. *Page 11 
 {¶ 23} In challenging the manifest weight of the evidence, appellant highlights his own testimony that A.M. caused the car to go off the road when she grabbed the steering wheel. The magistrate rejected this contention because the physical evidence did not support it. Specifically, there was evidence that the car appellant was driving left a yaw mark on the road. A yaw mark, as described by Mark Rice, a crash reconstructionist for the Columbus Police Department, is a mark left by a car's wheels when they are turned to make a turn, but the energy of the car exceeds the ability of the wheel to make the turn, so that the car actually moves forward while the wheel is turned in the direction the driver wants to turn.[2] Mr. Rice testified that a yaw mark from appellant's car was found on Agler Road beginning in the oncoming or passing lane of traffic. The mark continued through the other lane and onto the grass. A yaw mark indicates a point when the car is out of control.
 {¶ 24} Appellant testified that he had safely passed E.S. and was back in his lane when A.M. grabbed the steering wheel causing him to lose control of the car. However, the physical evidence established that the yaw mark began in the passing lane. Therefore, even if A.M. grabbed the wheel as appellant describes, the car was already out of control. Appellant's testimony that he was in control of the car until A.M. grabbed the steering wheel after he returned to his lane is contradicted by the yaw mark, which begins in the oncoming lane of traffic, before appellant would have passed E.S. Moreover, there would have been no reason for A.M. to grab the steering wheel if appellant had already passed E.S. and he had returned to his lane of travel. The trier of *Page 12 
fact did not clearly lose its way when it rejected appellant's claim that A.M. caused this accident.
 {¶ 25} The trier of fact also could have simply disbelieved appellant's claim that A.M. caused the accident by grabbing the steering wheel. Appellant's testimony is inconsistent with the physical evidence. This is not the exceptional case in which the evidence weighs heavily against the delinquency finding. There was substantial evidence that appellant's conduct was reckless, and that his recklessness caused the death of another while operating a motor vehicle.
 {¶ 26} The trial court's delinquency finding for committing aggravated vehicular homicide was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, the first and second assignments of error are overruled.
 {¶ 27} Appellant contends in his fourth assignment of error that the trial court lacked the authority to prohibit him from applying for a driver's license until his 21st birthday. We disagree.
 {¶ 28} A juvenile court's disposition for a child adjudicated delinquent is a matter within the court's discretion. In re T.H., Clermont App. No. CA2006-02-021, 2007-Ohio-352, at ¶ 10. Thus, an appellate court will not disturb such a disposition absent an abuse of discretion. Id., citing In re D.S., 111 Ohio St.3d 361, 2006-Ohio-5851, at ¶ 6; In re Walker, Franklin App. No. 02AP-421, 2003-Ohio-2137, at ¶ 21. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. *Page 13 
 {¶ 29} Appellant was found delinquent for committing an act of aggravated vehicular homicide, an offense that would be a felony of the third degree if committed by an adult. R.C. 2152.11(F) provides the dispositional alternatives for a trial court to impose in such a case. While none of those dispositional alternatives specifically prohibits an adjudicated delinquent from applying for a driver's license, R.C.2152.19(A)(8) allows a trial court to impose "any further disposition that the court finds proper * * *" (notwithstanding limitations not applicable). Such a further disposition is within the juvenile court's discretion. See In re D.S.
 {¶ 30} The overriding purposes for dispositions regarding juvenile delinquents are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable * * * restore the victim, and rehabilitate the offender." R.C. 2152.01(A). Dispositions must "be reasonably calculated to achieve the overriding purposes set forth in this section, commensurate with and not demeaning to the seriousness of the delinquent child's * * * conduct and its impact on the victim * * *." R.C. 2152.01(B); see, also, In reJ.D., Franklin App. No. 06AP-995, 2007-Ohio-3279, at ¶ 10.
 {¶ 31} The trial court did not abuse its discretion by prohibiting appellant from applying for a driver's license until his 21st birthday. The prohibition is directly related to the underlying conduct in this case: appellant recklessly drove a car without a driver's license and caused A.M.'s death. Preventing appellant from driving until he reaches age 21 is reasonably calculated to achieve many of the purposes of juvenile dispositions: protecting the public and the juvenile, rehabilitating the juvenile, and holding the juvenile accountable. Appellant's fourth assignment of error is overruled. *Page 14 
 {¶ 32} Finally, appellant contends in his fifth assignment of error that trial counsel was ineffective for failing to object to the trial court's prohibition against appellant applying for a driver's license until age 21. We first note that counsel filed objections to the magistrate's disposition on July 6, 2006. One of those objections addressed the magistrate's decision to prohibit appellant from applying for a driver's license until his 21st birthday. Thus, trial counsel did object to the disposition. Additionally, because the trial court did not err by imposing the disposition, trial counsel could not have been ineffective even if he had failed to object. See State v.Jackson, 92 Ohio St.3d 436, 446-447, 2001-Ohio-1266 (finding no ineffective assistance of counsel for failing to object to proper jury instruction); State v. Wellman, Franklin App. No. 05AP-386,2006-Ohio-3808, at ¶ 50 (finding no ineffective assistance of counsel for failing to object to conduct that was not error). Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 33} Having overruled appellant's five assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
SADLER, P.J., and BRYANT, J., concur.
[1] Although E.S. denied this, there is evidence indicating that she and A.M. were racing each other as they drove down Morse Road.
[2] The yaw mark provided the basis for Mr. Rice's conclusion that T.S. was driving at 61 miles per hour when the mark was made. *Page 1